**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juanita Valentine,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-19-05127-PHX-JJT<br><br>**ORDER** |

    At issue is the denial of Plaintiff Juanita Valentine's Application for Disability Insurance Benefits and Supplemental Security Income Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant Social Security Commissioner's Answering Brief conceding that the Administrative Law Judge ("ALJ") committed legal error and requesting remand pursuant to 42 U.S.C. § 405(g) (Doc. 23, Def. Br. & Mot.), and Plaintiff's Reply Brief (Doc. 26). The only question before the Court is whether the ALJ's decision must be remanded for further proceedings or for an award of benefits. Because the Court finds that the three factors for the credit-as-true test are met, the Court reverses the ALJ's decision as upheld by the Appeals Council and remands the case to the Social Security Administration for a calculation of benefits.

**I.    BACKGROUND**

On August 16, 2017, Juanita Valentine applied for Disability Insurance Benefits under Title II and Title XVII of the Social Security Act ("the Act") as well as Supplemental Security Income Benefits under Title XVI of the Act, alleging disability beginning May 11, 2017. (Doc. 12, R. at 210–226.) After Ms. Valentine's application was denied initially and on reconsideration, she requested a hearing, which was held on January 15, 2019. (R. at 31–57.) On February 25, 2019, an ALJ issued a decision denying Ms. Valentine's claims. (R. at 11–30.) On July 15, 2019, the Appeals Council upheld the ALJ's decision. (R. at 1-6.) On September 10, 2019, Ms. Valentine filed an appeal to this Court. (Doc. 1.)

In response to Plaintiff's Opening Brief, Defendant concedes that the ALJ erred in evaluating evidence of Plaintiff's mental health and moves to remand, arguing that the present record leaves doubt as to whether Plaintiff is disabled under the Act. In her Reply, Plaintiff argues that no outstanding issues remain, and the Court should find Plaintiff disabled under the Act and remand for a calculation of benefits.

**A.    Plaintiff's Past Employment**

In the past 15 years, Plaintiff was employed as a manager and server at Waffle House, which required light physical exertional levels. She also was employed as a home companion for an elderly client, which required medium physical exertional levels. (R. at 23.)

**B.    Plaintiff's Treatment Records**

Ms. Valentine suffered physical and sexual abuse as an adolescent at the hands of her mother and other family members. (R. at 435, 448, 477.) She has been diagnosed with ADHD, anxiety disorder, and bipolar disorder. (R. at 450, 480, 518.) She has attempted suicide multiple times and harmed herself by cutting and throwing herself from a moving vehicle. (R. at 435, 448, 477, 480, 499.) At multiple points, she has reported sleeping up to 16 hours per day, suffering from crying spells, irritability as well as mood swings, and stated that her husband does not trust her to care for their children. (R. at 480.) She has

been prescribed a variety of medications, including Adderall for ADHD, Lamictal for bipolar disorder, Hydroxyzine and Lorazepam for anxiety, and the antidepressant Cymbalta. (R. at 344, 474, 518–19.) Ms. Valentine additionally suffers from physical impairments, including liver disease caused by Hepatitis C as well as degenerative disc disease. (R. at 17, 482–83.)

### C.   Medical Opinion Evidence

Ms. Valentine has received diagnoses from multiple medical professionals. Some of the diagnoses are based on an examination of Ms. Valentine while others are based on the notes from professionals who examined her.

#### 1.   Treating Medical Professionals at Southwest Behavioral

Starting in early 2017, Ms. Valentine went to Southwest Behavioral and Health Services ("Southwest") on multiple occasions for mental health treatment. Amongst others, she was examined by Desanne Gonsalves (MS, PA, BHP) and Alicia Sexton (NP) ("NP Sexton"). Over the course of these appointments, the medical professionals observed Ms. Valentine to be depressed, distracted, as well as anxious, and diagnosed her with ADHD, an anxiety disorder, a major depressive disorder, and eventually a bipolar disorder. (R. at 425–27, 777.) In October 2018, NP Sexton examined Ms. Valentine to determine her capacity to function as an employee and determined that Ms. Valentine's skillset would have "severe" or "moderately severe" limitations in significant areas. Based on Ms. Valentine's "psychiatric status," NP Sexton found that Ms. Valentine would have "severe" limitations both "respond[ing] to customary work pressures" as well as "respond[ing] appropriately to co-workers." She further found that Ms. Valentine would have "moderately severe" limitations in her ability to "understand, carry out, and remember instructions" as well as her ability to "respond appropriately to supervision." NP Sexton expected these impairments to last for 12 months or longer and observed that Ms. Valentine's psychiatric symptoms are exacerbated by a general medical condition. Finally, NP Sexton observed that Ms. Valentine's "mood dysregulation is very severe." (R. at 742–43.)

In July 2018, Kari Coelho, Psy.D. examined Ms. Valentine on behalf of the Arizona Department of Economic Security Disability Determination Services. Dr. Coelho noted that Ms. Valentine had normal speech and logical thought processes but had trouble concentrating and struggled to control her emotions throughout the examination. (R. at 479, 481.) She further observed that Ms. Valentine had scars on her arms from cutting and burning herself and that Ms. Valentine did not "appear capable of adhering to basic standards of neatness." (R. at 477, 481.) Dr. Coelho diagnosed Ms. Valentine with bipolar I disorder, obsessive compulsive disorder, posttraumatic stress disorder, and generalized anxiety disorder. (R. at 480.)

After the examination, Dr. Coelho indicated on a form regarding Ms. Valentine's employment prospects that Ms. Valentine had characteristics that would cause her to struggle immensely with all types of employment. (R. at 481.) Regarding Ms. Valentine's concentration and persistence, Ms. Coelho wrote, "she often does not complete tasks due to distractibility… [and] does not appear capable of maintaining regular attendance at a job." In response to prompts about Ms. Valentine's social skills, Dr. Coelho wrote "she has a history of poor impulse control and poor decision-making, which would negatively affect her ability to respond appropriately to supervision." Lastly, Dr. Coelho wrote that Ms. Valentine is "significantly impaired in her ability to respond appropriately to changes in a working setting… it is likely that she would be easily overwhelmed and not able to respond appropriately to changes." (R. at 481–82.)

### 2. Non-treating Physicians

On December 21, 2017, Keith Shelman, the state agency reviewing physician, reviewed Ms. Valentine's medical records and determined that she had "no significant limitations due to a medically determinable mental impairment that interfere with sustained activities in a competitive, remunerative work context." Dennis Swena, who reviewed Ms. Valentine's file on June 4, 2018, found the same. (R. at 69, 97–98.)

### D.     Summary of Hearing

At the hearing, Ms. Valentine's attorney as well as the ALJ questioned Ms. Valentine regarding her symptoms, diagnoses, and how her medical issues affected her daily life. They also questioned the Vocational Expert, Mark Kelman, on how Ms. Valentine's symptoms and diagnoses would affect her ability to maintain gainful employment.

#### 1.     Ms. Valentine's Testimony

Ms. Valentine testified that she has severe emotional problems and depression. She stated that on average she sleeps 12 hours per day, including during normal working hours, and has trouble concentrating and completing tasks such as the laundry and dishes. (R. at 40.) There are also multiple days per week where Ms. Valentine does not bathe or shower due to her depression. Ms. Valentine further testified that she has "extreme highs" and "extreme lows" and that her husband stopped working in order to stay home with their son because he did not trust Ms. Valentine to properly care for him. (R. at 38.) Regarding her physical pain, Ms. Valentine testified that she has significant pain in her legs and back, uses a back brace, and takes pain medication. She also has been diagnosed with Hepatitis C. (R. at 46.) Finally, Ms. Valentine testified that she has used many different medications, for both physical pain and psychological disorders, which have varied in their effectiveness and at times caused unpleasant side effects. (R. 50–51.)

#### 2.     Mr. Kelman's Testimony

Vocational Expert Mr. Kelman testified that a hypothetical claimant with Ms.Valentine's characteristics would be unfit for any type of employment. Specifically, when Plaintiff's attorney described Dr. Coelho's and NP Sexton's diagnoses of Ms. Valentine, Mr. Kelman opined that such diagnoses would "preclude all work." He then reiterated this assessment that there was "no work" that such a claimant could do. (R. at 56.)

Mr. Kelman testified that a hypothetical claimant with Ms. Valentine's physical ailments would be able to physically do all of Ms. Valentine's past jobs. When asked a separate hypothetical where claimant was less physically capable than Plaintiff, Mr. Kelman testified that such a claimant would not be able to do Ms. Valentine's past jobs but would be able to do unskilled jobs such as housekeeping or working at a fast food restaurant. (R. 54–55.)

## II.     LEGAL STANDARDS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the

inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.    ANALYSIS**

Both parties agree that the ALJ erred and the case should be remanded to the Commissioner. However, Defendant argues that because there is substantial evidence in the record that Plaintiff is not disabled, the case should be remanded for reconsideration. Plaintiff argues that the evidence in the record clearly establishes that Plaintiff is disabled, and the case should be remanded for an award of benefits. The evidence in the record includes opinions from multiple examining medical professionals as well as the Vocational Expert that Plaintiff's symptoms preclude her from maintaining employment in any capacity. Defendant has not presented evidence that conflicts with these determinations in any significant way. Therefore, evidence of Plaintiff's disability and its preclusive effect on Plaintiff's ability to work is sufficient to satisfy the five-step process under 20 C.F.R. § 404.1520(a) to find Plaintiff disabled.

Defendant does not dispute that Plaintiff is not engaged in substantial gainful activity at step one of the process and Plaintiff does not argue that she meets the

requirements for step three. Therefore, the Court will only analyze steps two, four, and five.

### A. Plaintiff Satisfies Step Two

At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment based on the four areas of mental functioning set out in the disability regulations. These areas are 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself. 20 C.F.R. § 404.1520(a)(4)(ii), Subpart P, Appendix 1. The ALJ found that Plaintiff did not meet step two because her "medically determinable mental impairments" only cause mild limitations in these four areas and are thus non-severe. (R. at 17.) Defendant concedes that the ALJ erred at step two in its evaluation of the evidence of Plaintiff's mental health treatment but argues that there is sufficient evidence in the record to create doubt as to whether Plaintiff has a severe mental impairment. The Court disagrees. Dr. Coelho, Plaintiff's treating physician, diagnosed Plaintiff with bipolar disorder, ADHD, and an anxiety disorder. Both she and NP Sexton, who examined and treated Plaintiff, detailed Plaintiff's symptoms such as uncontrollable crying, lack of concentration, constant sleeping, emotional instability, and others that indicate a severe disorder.

Defendant first argues that the examining medical professionals found that Plaintiff is functioning normally and does not have a severe mental impairment, which creates an inconsistency in the record necessitating remand. (Def. Br. & Mot. at 7.) *See Dominguez v. Colvin*, 808 F.3d 403, 408–09 (9th Cir. 2015). Defendant cites individual reports from Plaintiff's many visits to Southwest. This evidence is unconvincing; for one, Plaintiff's exhibition of normal behavior on certain visits is insignificant when compared to the vast evidence of severe impairment. Plaintiff's ability to speak normally or concentrate during one of her visits does not mean that Plaintiff does not suffer from disability. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability"). More importantly,

Defendant has cherry-picked information from those visits in order to give a false picture of Southwest's findings. For example, Defendant cites Plaintiff's May 1, 2018 appointment with Southwest, where the examining medical professional marked Plaintiff's appearance as "casual dress/normal grooming and hygiene," her thought processes as "content: goal-directed and logical," and her short and long-term memory as "intact," as evidence that Plaintiff does not have a severe mental impairment. (Def. Br. & Mot. at 7; R. at 425.) However, Defendant fails to mention that in that same report, the examiner noted Ms. Valentine's behavior as "crying, sobbing, frustrated," her mood as "depressed, anxious, and irritable," her memory as "distractible/inattentive," and her attitude as "distraught." (R. at 425.) Contrary to Defendant's characterization, the May 1, 2018 Southwest medical report is not evidence of "normal mental examination findings." Finally, Plaintiff's diagnoses of bipolar disorder, anxiety disorder, and ADHD as well as the multiple medical opinions that Plaintiff's symptoms preclude her from employment, are all evidence of a severe mental disorder.

Defendant next argues that Plaintiff's "conservative" treatment consisting of medication and counseling as opposed to in-patient hospitalization illustrates that she is not severely impaired. (Def. Br. & Mot. at 8.) This argument is similarly unpersuasive. While the Record indicates that at times medication has helped alleviate Plaintiff's symptoms, the medications many times were ineffective or caused negative side effects. (R. at 441, 568, 776.) And, regardless of whether medication at times alleviated Plaintiff's symptoms, the examining medical professionals and Mr. Kelman still found her symptoms to be severe enough to preclude employment. (R. at 41, 481–82, 742–43.)

Defendant appears to be arguing that anything short of in-patient hospitalization for a mental disorder is considered "conservative treatment," but does not cite any case law for this proposition. Furthermore, all of the cases that Defendant cites classifying medication as conservative treatment involve claimants suffering from physical disability rather than mental disability. *See e.g. Hanes v. Colvin*, 651 F. App'x 703 (9th Cir. 2016).

In sum, Claimant's treatment plan does not conflict with Plaintiff's claim of severe mental impairment.

Based on similar reasoning, the Court rejects Defendant's argument that Plaintiff's ability to "prepare simple meals," manage finances, clean, and do other basic tasks undercuts her claim of severe impairment. Defendant cites to *Brown-Hunter v. Colvin*, 806 F.3d 487, 495–96 (9th Cir. 2015) for the proposition that Plaintiff's ability to do daily activities was evidence that she was "quite functional." However, *Brown-Hunter* involved a plaintiff claiming serious disability for back and leg pain and thus her ability to move around and do "daily activities" was far more relevant than it is here. This case is particularly distinguishable from *Brown-Hunter* because much of Plaintiff's evidence of severe impairment is her inability to respond to supervision, interact with co-workers, and other workplace-specific issues. Therefore, her capacity to do basic household chores is inconsequential to the Court's determination of whether she is severely impaired.

Finally, Defendant argues that the nonexamining state agency physicians' opinions represent conflicts in the record that necessitate remand. However, their opinions are insufficient to overcome the substantial evidence of disability from the medical professionals who treated and examined Ms. Valentine. While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester*, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Here, Plaintiff has proffered evidence from NP Sexton, who treated Ms. Valentine, and Dr. Coelho, who examined her, that Plaintiff was diagnosed with bipolar disorder, anxiety disorder, as well as ADHD, and has symptoms consistent with a severe impairment. Under Ninth Circuit law, the ALJ can only disregard this evidence in favor of a

controverting opinion from a nonexamining physician by "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This type of evidence is not present in the record; therefore, the nonexamining physicians' opinions are insufficient to create doubt that Plaintiff is severely impaired.

### B.     Plaintiff Satisfies Steps Four and Five

Step four asks whether the claimant is capable of performing past relevant work and step five asks whether the claimant can perform any work at all. 20 C.F.R. § 404.1520(a)(4)(iv)–(v). Defendant's arguments were geared toward step two but arguably are applicable to steps four and five as well. However, for the reasons stated above, the Court does not find them convincing and will thus focus its analysis on whether there is sufficient evidence in the record to find that Plaintiff meets the requirements of these steps. Based on the reports of NP Sexton and Dr. Coelho, as well as the testimony of Mr. Kelman, the Court finds that Plaintiff has proffered sufficient evidence that her severe mental impairment precludes her from performing both past relevant work as well as any other hypothetical job. Dr. Coelho and NP Sexton were both clear in their reports that Plaintiff would have extreme difficulty responding appropriately to co-workers and supervisors, completing assignments, maintaining regular attendance at work as well as other issues that would make it difficult for Plaintiff to sustain steady employment. (R. at 481–82, 742–43.) Mr. Kelman was unequivocal that such disabilities would "preclude all work." (R. at 56.) Therefore, Plaintiff has met the requirements of all five steps.

### C.     The Credit-As-True Rule Applies

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 25–27.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099–1102. These rare circumstances arise when

three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the credit-as-true rule applies. Defendant acknowledges that the ALJ erred in disregarding evidence from the treating physicians but argues that the case should be remanded to resolve additional conflicts regarding whether Plaintiff is severely impaired. When all evidence in the Record is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve and finds that there is no uncertainty that Plaintiff's severe mental impairment precludes her from all work.[1] Because Plaintiff meets the five-step test and the credit-as-true rule applies, the Court will remand this case to the Social Security Administration for a calculation of benefits.

**IT IS THEREFORE ORDERED** granting in part Defendant's Motion for Remand (Doc. 23).

**IT IS FURTHER ORDERED** reversing the February 25, 2019 decision of the Administrative Law Judge (R. at 11–30), as upheld by the Appeals Council on July 15, 2019 (R. at 1–6).

---

[1] The lack of significant conflict as to Plaintiff's disability distinguishes this case from Ninth Circuit cases cited by Defendant where the Court held that the credit-as-true rule did not apply because there was significant factual conflict in the record as to the severity of the plaintiff's disability. *See Treichler*, 775 F.3d at 1105 (explaining that there were "crucial questions as to the extent of [plaintiff's] impairment given inconsistencies between his testimony and the medical evidence in the record"); *Dominguez v. Colvin*, 808 F.3d 403, 408–09 (9th Cir. 2015) (treating physician's opinion conflicted both with his treatment notes as well as with the opinion of a separate examining physician).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 30th day of November, 2020.

Honorable John J. Tuchi
United States District Judge